IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CAROLYN STAPP,

     Plaintiff,

v.                                              Case No. 15-cv-356 GBW/CG

CURRY COUNTY BOARD OF
COUNTY COMMISSIONERS,

     Defendant.

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's Motion for Summary Judgment. *See doc. 32.* Having reviewed the motion, the attendant briefing, and the relevant law, and being otherwise fully advised, the Court will GRANT Defendant's motion.

## I.    BACKGROUND

This case stems from Plaintiff's resignation from employment at the Curry County Adult Detention Center on March 26, 2012. *Doc. 1* at 3. Plaintiff was fifty-three years old when she was first employed by Defendant on January 14, 2011. *Id.* On June 11, 2012, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission. *Doc. 1* at 3. Plaintiff received a Right-to-Sue letter dated January 30th, 2015. *Id.*

Plaintiff brought a claim against Defendant asserting age discrimination,

retaliation, and violation of the Whistleblower Protection Act.  *Doc. 1* at 9-11.  On

August 12, 2015, Plaintiff filed a stipulated dismissal of her claim under the

Whistleblower Protection Act.  *Doc. 19*.  On January 6, 2016, Defendant filed a Motion

for Summary Judgment (*doc. 32*) and a second Motion for Summary Judgment of all

claims for compensatory damages (*doc. 33*).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that

"there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden

of "show[ing] 'that there is an absence of evidence to support the nonmoving party's

case.'"  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this

burden, the non-moving party is required to designate specific facts showing that "there

are . . . genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

The court's role is not to weigh the evidence or determine credibility, but rather

merely to assess whether a genuine issue exists as to material facts requiring a trial.  *See

Anderson*, 477 U.S. at 249, 255.  "[T]o survive the . . . motion, [the nonmovant] need only

present evidence from which a jury might return a verdict in his favor."  *Id.* at 257.

Furthermore, the court must resolve reasonable inferences and doubts in favor of the non-moving party, and construe evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 551-54 (1999). However, "viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be merely colorable or anything short of significantly probative." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (internal quotations omitted); *see also Anaya v. CBS Broad. Inc.*, 626 F. Supp. 2d 1158, 1197 (D.N.M. 2009) ("The mere existence of a scintilla of evidence will not avoid summary judgment."). As with any fact asserted by a party in a summary judgment motion, the plaintiff must point the Court to such support by "citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

### III.   UNDISPUTED FACTS

1. Plaintiff Carolyn Stapp began her employment as a Booking Officer at the Curry County Detention Center on January 14, 2011. *Doc. 32* at 2; *doc. 33* at 2; *doc. 36* at 3; *doc. 37* at 2.

2. Plaintiff was a good employee. *Doc. 32* at 4; *doc. 36* at 3.

3. At all times material, Curry County had a personnel policy in place which prohibited workplace harassment or discrimination, including on the basis of age, and which provided a procedure for raising claims or complaints of age

discrimination or harassment.

4. Curry County's personnel policy requires that any complaint of workplace harassment be reported to the Personnel Coordinator.  Under the policy, the Personnel Coordinator is the person authorized to receive and act upon any complaints of workplace harassment.  All complaints are investigated.  If any employee is dissatisfied with the conclusions or results of any investigation or with any corrective measures, the employee may appeal, in writing, to the County Manager.  *Doc. 32* at 5; *doc. 36* at 6.

5. Plaintiff received and acknowledged receipt of Curry County's personnel policy. *Doc. 32* at 5; *doc. 36* at 3.

6. Plaintiff received general training in workplace discrimination and harassment. *Doc. 32* at 5; *doc. 36* at 6; *doc. 39* at 4.

7. At all times material, Carrie Wilhite served as Personnel Coordinator for Curry County.  While Plaintiff met with Ms. Wilhite on multiple occasions and complained about working conditions, Plaintiff never reported ageist comments to Ms. Wilhite.  In addition, Plaintiff never presented any appeal to the County Manager.  *Doc. 32* at 3, 5; *doc. 36* at 4, 6.

8. At all times material, Rhonda Long was employed as a senior booking officer. *Doc. 32* at 2; *doc. 36* at 3.

9. At all times material, Cheryl Jouett was employed as a booking officer.  *Doc. 32* at

2; *doc. 36* at 4.

10. On January 13, 2012, Plaintiff met with Ms. Wilhite and complained about work conditions and the attitudes of Ms. Long and Ms. Jouett. However, Plaintiff did not report any ageist comments to Ms. Wilhite. *Doc. 32* at 3; *doc. 36* at 4.

11. Plaintiff claims that ageist comments were made by detention officers every day starting in October 2011. *Doc. 32* at 2; *doc. 36* at 3, 7; *doc. 39* at 4.

    i. A twenty-five year old detention officer named Sotelo nicknamed Plaintiff "old woman." *Doc. 36* at 7; *doc. 39* at 4.

    ii. Sotelo teased Plaintiff about her eyeglasses being "coke bottles." *Doc. 36* at 7; *doc. 39* at 4.

    iii. Sotelo teased Plaintiff about her dentures falling out. *Doc. 36* at 7; *doc. 39* at 4.

    iv. Plaintiff was called a "devil worshipper" by a sergeant in the presence of Ms. Long. *Doc. 36* at 7; *doc. 39* at 4.

    v. Several detention officers who were younger than Plaintiff called her "old woman" because she wore dentures and eyeglasses with thick lenses. *Doc. 32* at 2; *doc. 33* at 2; *doc. 36* at 2; *doc. 37* at 2.

    vi. When Plaintiff would get up from her chair, detention officers would say "be careful that you don't fall" or ask if she needed a cane. *Doc. 32* at 2; *doc. 33* at 2; *doc. 37* at 2.

12. Plaintiff claims that Ms. Long instigated the comments by telling the detention

officers her age.  *Doc. 32-1* at 4; *doc. 32* at 2; *doc. 36* at 3.

13. On more than one occasion, Ms. Long told the detention officers to stop making

the ageist comments.  *Doc. 32* at 2; *doc. 36* at 4.

14. On February 21, 2012, Plaintiff complained to the Detention Center

Administrator, Tori Sandoval, that the working environment with Ms. Long and

Ms. Jouett was hostile.  However, Plaintiff does not remember reporting any

ageist comments to Ms. Sandoval.  Ms. Sandoval explained that if Plaintiff felt

that she was being harassed, that she should speak to Ms. Wilhite or the human

resources department.  *Doc. 32* at 3; *doc. 36* at 5.

15. As a result of this complaint, Ms. Sandoval held a meeting with other booking

officers on February 27, 2012 to discuss workplace attitudes, animosity, a

hostility in the work environment, overtime, and not being required to work on

days when officers were not scheduled.  *Doc. 32* at 3; *doc. 33* at 2; *doc. 36* at 5; *doc.

37* at 2.

16. On March 4, 2012, Plaintiff asked Ms. Wilhite for time off work because of Ms.

Jouett's alleged hostility.  Plaintiff did not state that this hostility was due to age

discrimination.  *Doc. 32* at 4; *doc. 36* at 5; *doc. 39* at 3.

17. Plaintiff met with Ms. Wilhite again on March 8, 2012 to complain about the

jealousy, mean treatment, and attitudes of Ms. Long and Ms. Jouett.  However,

Plaintiff did not report ageist comments at this meeting.  *Doc. 32* at 4; *doc. 36* at 5.

18. Plaintiff claims that the last time any alleged ageist remark was made was on March 11, 2012.  *Doc. 32* at 4; *doc. 36* at 3.

19. Plaintiff was out sick from March 12-18, 2012.  Plaintiff returned to work on March 19-20, 2012, which was Monday and Tuesday.  *Doc. 32* at 4; *doc. 36* at 3.

20. In her diary of her work at the Detention Center, Plaintiff documented that on March 19-20, 2012, she had problems with Ms. Long and another officer, Sheila Morrison, being distant.  Plaintiff cannot describe this with any specificity, but stated that the animosity was high.  *Doc. 32* at 4; *doc. 33* at 2; *doc. 36* at 3; *doc. 37* at 2.

21. Plaintiff's regular days off work were Wednesday and Thursday.  *Doc. 32* at 4; *doc. 36* at 3.  Consistent with this schedule, Plaintiff was off work on Wednesday and Thursday, March 21-22, 2012.  *Doc. 32* at 4; *doc. 36* at 3.

22. On Thursday, March 22, 2012, Plaintiff called in and reported she could not be at work on Friday, March 23, 2012, because she needed to attend to her husband, who was having medical difficulties.  *Doc. 32* at 4; *doc. 36* at 3.

23. On March 23, 2012, Plaintiff spoke on the phone with Ms. Wilhite and complained that Sheila Morrison had recently been hostile toward her.  Plaintiff informed Ms. Wilhite that she was being forced to resign and planned to resign on Monday, March 26, 2012.  *Doc. 32* at 4; *doc. 36* at 5-6.

24. Ms. Wilhite encouraged Plaintiff not to resign, telling Plaintiff that she was a good employee and offering to open an investigation. *Doc. 32* at 5; *doc. 36* at 5-6. Ms. Wilhite had offered an investigation in the past, but had never opened an investigation. *Doc. 32* at 5; *doc. 36* at 6; *doc. 39* at 4.

25. Plaintiff did not work on March 24-25, 2012, and did not call in sick for either day. *Doc. 32* at 5; *doc. 36* at 5-6.

26. Plaintiff tendered her resignation on March 26, 2012 because of the alleged hostile work environment, harassment, animosity, and emotional suffering. *Doc. 33* at 2; *doc. 37* at 2.

27. Plaintiff never reported the ageist comments to the County Manager. *Doc. 32* at 2; *doc. 36* at 4.

28. Plaintiff was supposed to receive a raise in pay in January 2012, but did not receive the raise until March 2012. *Doc. 36* at 8; *doc. 39* at 5.

## IV. ANALYSIS

Plaintiff alleges that Defendant is liable to Plaintiff for age discrimination and retaliation. For the following reasons, the Court finds that Defendant is entitled to summary judgment on both of Plaintiff's claims.

### A. *Plaintiff's Claim of Age Discrimination Fails as a Matter of Law*

The Age Discrimination in Employment Act ("ADEA") states that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C.A. § 623(a).  To establish a *prima facie* case of discrimination, Plaintiff must show "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination."  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012).  An adverse employment action occurs when an employee is demoted, terminated from employment, or constructively discharged from employment.  *See Chapman v. Carmike Cinemas*, 307 F. App'x 164, 173 (10th Cir. 2009); *Fischer v. Forestwood Co.*, 525 F.3d 972, 980 (10th Cir. 2008); *Walton v. New Mexico State Land Office*, 113 F. Supp. 3d 1178, 1197 (D.N.M. 2015).  Plaintiff alleges that she has suffered age discrimination under the theories of constructive discharge and hostile work environment, which will be analyzed in turn.

   i.   Constructive Discharge

Plaintiff first asserts that she was constructively discharged from employment.  *Doc. 36* at 15.  Constructive discharge occurs when "an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign."  *Fischer*, 525 F.3d at 980.  A plaintiff alleging constructive discharge must essentially "show that she had no other choice but to quit."  *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997).  In determining whether an employee was constructively discharged, courts apply an

objective test in which "the plaintiff's subjective views of the situation are irrelevant." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998).  In addition, "an employee cannot survive summary judgment by merely producing evidence that working conditions were difficult or unpleasant."  *Fischer*, 525 F.3d at 981.

Here, although Plaintiff alleges that the detention officers' comments were offensive and embarrassing, these remarks alone are insufficient to show intolerable working conditions.  *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 794 (10th Cir. 2007) (finding that the plaintiff failed to demonstrate intolerable working conditions where the defendant repeatedly subjected female employees to sexually explicit and derogatory remarks).  While the unpleasant working conditions may have contributed to Plaintiff's desire to resign from her employment, there is no constructive discharge because the working conditions did not affect her ability to do her job.  *See DeWalt v. Meredith Corp.*, 484 F. Supp. 2d 1188, 1200 (D. Kan. 2007), *aff'd*, 288 F. App'x 484 (10th Cir. 2008) (finding that the plaintiff could have continued to work "even though that option may not have been very appealing to him").  In addition, there is no constructive discharge where Plaintiff has alternatives to resignation.  *See Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1136 (10th Cir. 2004) (no constructive discharge where employer "provided [the plaintiff] with alternatives to quitting and offered to investigate his complaints"). When Plaintiff spoke with Ms. Wilhite and expressed her desire to resign, Ms. Wilhite offered to conduct an investigation into the alleged harassment and

encouraged her not to quit.  Plaintiff therefore was not constructively discharged, as she

cannot demonstrate that the unpleasant work conditions gave her no other choice but to

resign.

    ii.   <u>Hostile Work Environment</u>

Plaintiff also alleges that she has experienced age discrimination under the less

stringent standard of a hostile work environment.  *See Pennsylvania State Police v. Suders*,

542 U.S. 129, 146 (2004).  To survive summary judgment on a claim of hostile work

environment, a plaintiff "must show that a rational jury could find that the workplace is

permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment."  *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d

1257, 1264 (10th Cir. 1998).  In determining whether there is a hostile work environment,

relevant considerations include "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work

performance."  *Walton*, 113 F. Supp. 3d at 1185-86 (citing *Faragher*, 524 U.S. at 787-88).

Plaintiff's allegations of ageist comments directed at her in the workplace are

insufficient to show a hostile work environment.  *See DeWalt v. Meredith Corp.*, 288 F.

App'x 484, 495-96 (10th Cir. 2008) (employer's use of ageist comments, such as calling

employees "dinosaurs" and teasing them for being old, were insufficient to show

hostile work environment).  Plaintiff's additional allegations, that her coworkers and supervisors were rude to her and felt distant, are also insufficient.  *See MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (finding that "passive treatment does not constitute an adverse employment action"); *Adamson v. J.C. Penney Co.*, No. 1:12-CV-154 DN, 2014 WL 4355415, at *9-10 (D. Utah Sept. 3, 2014) (plaintiff's alleged "cold looks" and being yelled at "are just not severe and pervasive enough").  Instead, a hostile work environment requires evidence that the unpleasant conditions impacted Plaintiff's ability to do her job.  *See Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1127 (D.N.M. 2011) (no hostile work environment where physical assault against the plaintiff failed to "bring lasting harm to the plaintiff's ability to do his job"); *Sanchez*, 164 F.3d at 531-34 ("Unsubstantiated oral reprimands and unnecessary derogatory comments . . . are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status.").  Plaintiff again fails to demonstrate how the unpleasant work conditions prevented her from doing her job, and as a result she cannot establish a hostile work environment.

     iii.   *Ellerth/Faragher* Defense

     Even if the Court were to find that Plaintiff was constructively discharged from her employment or suffered from a hostile work environment based on her age, her claim of age discrimination would fail.  Generally, "an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a

supervisor with immediate . . . authority over the employee." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 745, 118 S. Ct. 2257, 2261, 141 L. Ed. 2d 633 (1998).  However, the Supreme Court has provided employers an affirmative defense in cases where no tangible employment action is taken.  *See Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 745 (10th Cir. 2014).  This defense, known colloquially as *Ellerth/Faragher*, has been specifically applied to claims of constructive discharge because there is no official act leading to the adverse employment consequences.  *Pennsylvania State Police*, 542 U.S. at 148; *see Chapman*, 307 F. App'x at 172.  The employer may raise this *Ellerth/Faragher* defense to liability if it can show by a preponderance of the evidence "(a) that the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior, and (b) that the plaintiff unreasonable failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Pennsylvania State Police*, 542 U.S. at 137-138.

### a. The Ellerth/Faragher Defense Applies to Claims under the ADEA

Plaintiff asserts that the *Ellerth/Faragher* defense does not apply to claims under the ADEA.  *Doc. 36* at 9.  While the Tenth Circuit has not yet ruled definitively on this question, persuasive authority from other federal courts has found the defense applicable to claims under the ADEA.  *See, e.g., Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 295 (S.D.N.Y. 2009); *Oleyar v. Cty. of Durham*, 336 F. Supp. 2d 512, 519

(M.D.N.C. 2004); *Lacher v. West*, 147 F. Supp. 2d 538, 543-44 (N.D. Tex. 2001). In

addition, the Tenth Circuit commonly applies Title VII standards to ADEA claims

where the statutes contain similar language. *See, e.g., Jones v. Oklahoma City Pub. Sch.*,

617 F.3d 1273, 1279 (10th Cir. 2010) (applying the *McDonnell Douglas* standard from Title

VII to ADEA claims); *Carter v. Newman Mem'l Cty. Hosp.*, 49 F. App'x 243, 247 (10th Cir.

2002) (applying the Title VII standard for hostile work environment to an ADEA case).

The Supreme Court derived the *Ellerth/Faragher* defense from Title VII's definition of

"employer," which includes an employer's agents. *See Ellerth*, 524 U.S. at 754

(discussing 42 U.S.C. § 2000e(b)). Similar to Title VII, the ADEA defines "employer" to

include "any agent" of the employer. 29 U.S.C. § 630(b). Accordingly, this Court

concludes, consistent with other Tenth Circuit analysis, that the *Ellerth/Faragher* defense

derived from Title VII is applicable to ADEA claims.

> b. *The Ellerth/Faragher Defense Was Timely Raised in Defendant's Answer*

Plaintiff asserts that Defendant cannot raise the *Ellerth/Faragher* defense because

it failed to raise such a defense in its answer to the complaint. *Doc. 36* at 10. Rule 8(c) of

the Federal Rules of Civil Procedure states that "[i]n responding to a pleading, a party

must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c).

This has been interpreted to require that affirmative defenses must be pleaded or they

are deemed waived. *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1539 (10th Cir. 1991).

However, "[t]he general purpose of [Rule] 8(c) is to provide particularized and specific

notice of certain defenses." *State Distributors, Inc. v. Glenmore Distilleries*, 738 F.2d 405, 410 (10th Cir. 1984).  As a result, the courts must "scrutinize the record to [ensure] that [the] plaintiff had sufficient notice and opportunity to rebut an allegedly [untimely] raised affirmative defense."  *Renfro*, 948 F.2d at 1539.

Here, Defendant raised multiple affirmative defenses in its answer to the complaint.  In Affirmative Defense No. 11, Defendant stated that "Defendant exercised reasonable care to address Plaintiff's complaints and harassment or discrimination." *Doc. 4* at 6.  In Affirmative Defense No. 9, Defendant stated that "Plaintiff failed to mitigate her damages in that she failed to follow available investigatory and remedial mechanisms available."  *Id.*  These affirmative defenses raised in the answer mirror the elements of the *Ellerth/Faragher* defense.  Thus, Plaintiff had sufficient notice and opportunity to rebut Defendant's *Ellerth/Faragher* defense, and the Court finds that the defense has been timely raised.

> *c. Defendant Has Satisfied Both Elements of the Ellerth/Faragher Defense*

The first element of the *Ellerth/Faragher* defense imposes two requirements on an employer: "(1) the employer must have exercised reasonable care to prevent [discriminatory] harassment and (2) the employer must have exercised reasonable care to correct promptly any [discriminatory] harassment that occurred.  *Helm v. Kansas*, 656 F.3d 1277, 1288 (10th Cir. 2011).  An employer can show that it has exercised reasonable care to prevent discriminatory harassment by demonstrating that it has enacted a

reasonable policy to prevent harassment and has provided training to its employees on the subject of harassment.  See *Ellerth*, 524 U.S. at 745 ("While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense."); *Pinkerton v. Colorado Dep't of Transp.*, 563 F.3d 1052, 1061-67 (10th Cir. 2009) (considerations for first element of *Ellerth/Faragher* defense include whether the defendant provides an adequate sexual harassment policy and training for employees).  Here, it is undisputed that Defendant had enacted policies which provide a process by which employees may report age discrimination, and also that Defendant provided harassment training to its employees, including Plaintiff. Therefore, Defendant has satisfied the first requirement of the prong.

As to the second requirement, "in order to establish that it took proper action to correct harassment, [Defendant is] required to show that it acted reasonably promptly on [Plaintiff's] complaint when it was given proper notice of her allegations as required under its complaint procedures."  *Helm*, 656 F.3d at 1290.  Defendant satisfies this requirement because it was never given proper notice of Plaintiff's allegations of age-based discriminatory behavior.  Defendant's personnel policy states that "the Personnel Coordinator is the person who is authorized under this policy to receive and act upon any complaints of harassment or discrimination on behalf of the County."  *Doc. 32-4* at

16

5.  Defendant was never put on notice of any discriminatory behavior, as Plaintiff never reported age discrimination to Ms. Wilhite.  While Plaintiff did report general harassment to Ms. Wilhite, she failed to state her belief that the harassment was due to her age.  As a result, Defendant had no reason to act to correct age discrimination in this case, as it was not aware that any such behavior had occurred.  Thus, the second requirement of the first prong of the *Ellerth/Faragher* defense is also satisfied.

An employer can satisfy the second prong of the *Ellerth/Faragher* defense by demonstrating that the employee failed to utilize the employer's internal complaint procedures.  *See Pinkerton*, 563 F.3d at 1061-67 (second element of *Ellerth/Faragher* defense is satisfied where the plaintiff "acknowledged having read [her employer's] harassment policy and yet never availed herself of the numerous opportunities to report the incidents at her many meetings"); *Ellerth*, 524 U.S. 742, 745 (1998) (finding that "a demonstration of [the plaintiff's failure to use a complaint procedure provided by the employer] will normally suffice to satisfy the employer's burden under the second element of the defense").

Here, Plaintiff failed to use her employer's internal procedures for addressing discrimination.  Plaintiff conceded that she received a copy of the County's personnel policy, which states that "[a]ny employee[] who believes they are a victim of harassment should . . . report the matter to the Personnel Coordinator."  *Doc. 32-4* at 5. Plaintiff met with Ms. Wilhite multiple times during the course of her employment, yet

each time failed to inform her that Plaintiff believed she was being harassed due to her age.  Although Plaintiff did inform Ms. Long about the ageist comments, this is insufficient reporting because Plaintiff alleges that Ms. Long was herself one of the harassers.  *See Chapman*, 307 F. App'x at 173 (defense available where "there is no indication in the record that any management other than the harassers knew about the objectionable conduct").  Plaintiff's action of complaining only to the offending managers and failing to notify any upper management, as directed by the anti-harassment policy, is unreasonable.  *See Chapman*, 307 F. App'x at 173.  Accordingly, Defendant has established both elements of the *Ellerth/Faragher* defense, and summary judgment is appropriate as to Plaintiff's age discrimination claim.

### B.   *Plaintiff's Claim of Retaliation Fails as a Matter of Law*

Plaintiff also asserts that she was retaliated against for reporting age discrimination.  To establish a *prima facie* claim for retaliation under the ADEA, Plaintiff must demonstrate "(1) that she engaged in protected activity; (2) that she suffered a materially adverse action . . . either after or contemporaneous with her protected activity; and (3) a causal connection between the protected activity and the adverse action.  *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010); *see also Sanchez*, 164 F.3d at 533 ("A meritorious retaliation claim will stand even if the underlying discrimination claim fails.").  Because the anti-retaliation provisions of the ADA and the ADEA are nearly identical to the anti-retaliation provision of Title VII,

courts have held that precedent interpreting any one of these statutes is equally relevant to guide interpretation of the others.  *See, e.g., E.E.O.C. v. Wal-Mart Stores, Inc.*, 576 F. Supp. 2d 1240, 1245 n. 3 (D.N.M. 2008); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

First, Plaintiff alleges that she engaged in protected activity by reporting age discrimination to her supervisors and to the County.  Protected activity includes "complaints to superiors about discriminatory conduct."  *Walton*, 113 F. Supp. 3d at 1197 (D.N.M. 2015); *see O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001); *Pastran v. K–Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000).  To qualify as protected activity, the employee "must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA."  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008).  While Plaintiff failed to give Ms. Wilhite any indication that the unpleasant conditions were due to her age, Plaintiff did specifically inform Ms. Long that she was offended by ageist remarks.  As a result, the Court presumes without deciding[1] that Plaintiff's request to Ms. Long regarding the ageist comments constitutes protected activity under the ADEA.

Plaintiff must next demonstrate that she experienced a materially adverse action which is causally connected to her protected activity.  To establish an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged

---

[1] Plaintiff and Defendant appear to have a factual dispute as to whether Ms. Long was a supervisor of Plaintiff.  *See doc. 32* at 2; *doc. 36* at 3.  However, this dispute is immaterial, as summary judgment is appropriate on Plaintiff's retaliation claim even assuming that Ms. Long qualifies as Plaintiff's supervisor.

action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination*." Reinhardt*, 595 F.3d at 1133.  As discussed above, Plaintiff cannot demonstrate that she suffered from either a constructive discharge or a hostile work environment.  Even if the Court were to find a constructive discharge or a hostile work environment, however, Plaintiff's retaliation claim on these theories would fail on the element of causation, as explained below.

Plaintiff also claims that she was denied a pay raise in retaliation for her complaints about the unpleasant work environment.  *Doc. 36-1* at 5.  The County Manager approved a pay raise for Plaintiff on January 14, 2012, yet Plaintiff did not actually receive the pay raise until the pay period of March 4, 2012.  *Doc. 36-1* at 9-15.  This failure to give Plaintiff a pay raise constitutes a materially adverse action for purposes of a retaliation claim.  *See, e.g., Reinhardt*, 595 F.3d at 1133.

However, Plaintiff fails to establish that either the unpleasant work conditions or the denial of a pay raise were caused by her protected activity of reporting the ageist comments to Ms. Long.  A causal connection can be "demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  *Burrus v. United Tel. Co. of Kansas*, 683 F.2d 339, 343 (10th Cir. 1982).  However, a causal connection cannot be demonstrated where the

timeline of events suggests that the adverse employment action was not caused by the

protected activity.  *See, e.g., MacKenzie*, 414 at 1279.

      Here, Plaintiff cannot demonstrate a causal connection.  Plaintiff fails to identify

the date in which she spoke to Ms. Long about the offending comments, and as a result

she cannot demonstrate which activity occurred before her meeting with Ms. Long and

which activity occurred after.  Plaintiff offers no evidence that the unpleasant work

conditions were caused by her protected activity as opposed to her age or some other

reason.  In addition, while there is no indication of why the pay raise was not received

prior to the pay period of March 4, 2012, Plaintiff has provided no evidence whatsoever

that this delay was due to her complaint about age discrimination.  With no evidence

other than continued unpleasant conditions and a delayed pay raise, Plaintiff has failed

to establish retaliation based on her protected activity.  *See MacKenzie*, 414 F.3d at 1280

("Because we have uncovered nothing aside from [the plaintiff's] claim of temporal

proximity to establish causation . . . we cannot conclude [that the plaintiff] has

sufficiently demonstrated that her poor performance rating and one-day suspension

were due to her protected activity.").  Therefore, summary judgment must be granted

on Plaintiff's claim of retaliation.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (*doc. 32*)

is GRANTED.[2]

IT IS SO ORDERED.

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**

---

[2] As all of Plaintiff's claims have been dismissed, the Court also finds as moot Defendant's Motion for Summary Judgment regarding claims for compensatory damages (*doc. 33*).